UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**MANTISSA CORPORATION,**

    Plaintiff,

v.

**FIRST FINANCIAL CORPORATION and
FIRST FINANCIAL BANK, N.A.,**

    Defendants.

Case No. 1:17-cv-09174

Hon.

JURY TRIAL DEMANDED

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Mantissa Corporation ("Plaintiff" or "Mantissa"), for this Complaint against Defendants First Financial Corporation ("FFC") and First Financial Bank, N.A.("FFB") (collectively, "Defendants"), alleges as follows:

### NATURE OF LAWSUIT

1. This is an action for patent infringement under 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

### PARTIES

2. Plaintiff Mantissa is an Alabama corporation with its principal place of business at 1012 Edenton St., Birmingham, AL 35242-9258.

3. On information and belief, Defendant FFC is an Indiana bank holding company, having a registered principal office address at First and its headquarters and registered agent at the physical address One First Financial Plaza, Terre Haute, Indiana 47807.

4. On information and belief, Defendant FFB is a bank having a main office at One First Financial Plaza, Terre Haute, Indiana 47807 and a registered mailing address of P.O. Box 2122, Terre Haute, IN 47802. On information and belief FFB or its predecessor applied for and

received approval from the Federal Reserve Board to establish FFC as a holding company of FFB or its predecessor.

5. On information and belief, Defendants have approximately 30 bank branches in the State of Illinois.

## JURISDICTION AND VENUE

6. On information and belief, Defendants have committed acts and continue to commit acts of patent infringement giving rise to this action under the patent laws of the United States, 35 U.S.C. §§ 271 and 281. This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

7. On information and belief, under Illinois's long-arm statute, 735 ILCS § 5/2-209, Defendants submitted to the personal jurisdiction of this Court because Defendants, inter alia: transacted business within the State of Illinois; committed a tortious act within the State of Illinois; engaged in an act of patent infringement in the State of Illinois and this District; have a place of business within the State of Illinois; regularly conduct or solicit business in the State of Illinois; engage in other persistent courses of conduct in the State of Illinois; and/or derive substantial revenue from goods and services provided to persons or entities in the State of Illinois. Further, on information and belief, Defendants have established minimum contacts with the State of Illinois and this District such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

8. On information and belief, venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) because Defendants (a) have a regular and established place of business in this District or the State of Illinois; (b) have conducted business in this District and the State of Illinois; (c) have committed acts of infringement in this District and the State of Illinois; and/or

(d)(i) reside in this District, (d)(ii) are incorporated in the State of Illinois; and/or (d)(iii) are registered to conduct business in the State of Illinois.

9. On information and belief, Defendants are willing to waive any defect in venue in this District under 28 U.S.C. §§ 1391(b) and 1400(b) to have this action heard in this District.

## BACKGROUND

10. Mantissa is an enterprise software company founded in 1980 and developing identity protection solutions since 2003. Mantissa's main product for identity protection is the iDovos® system (http://idovos.com/), first offered in 2006. The iDovos system lets identity owners set conditions for use of their identity assets. The conditions include on/off, category, and geographic scope.

11. The iDovos system is protected by, among other intellectual property rights, U.S. Patent No. 9,361,658 ("'658 Patent") titled "System and Method for Enhanced Protection and Control Over the Use of Identity." A copy of the '658 Patent is attached as Exhibit A and is incorporated herein by reference.

12. The United States Patent and Trademark Office ("USPTO") duly and legally issued the '658 Patent" on June 7, 2016.

13. Mantissa is the exclusive licensee of the '658 Patent, and holds all substantial rights and interest in the '658 Patent.

14. Generally, the '658 Patent claims specific methods, executed on electronic computer hardware in combination with software, for protecting and controlling use of an entity's financial account.

15. Generally, the claims of the '658 Patent provide specific methods and systems in which an account owner, rather than a bank, can define, over a network, rather than through bank

personnel, a scope of use of the owner's account including whether the account is ON or OFF, whether certain categories of transaction partners are authorized for transactions using the account, and a geographical area in which transactions are authorized. At the time of the claimed invention, these methods were not "well-understood, routine, conventional" activities in the banking industry. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

16. The claims of the '658 Patent solve a problem that is rooted in computer technology that uses computer networks, namely, preventing fraudulent transactions using financial accounts accessible over a computer network. The claims of the '658 Patent do not recite the performance of well-understood, routine, conventional business practice known before the invention defined by the claims.

17. The '658 Patent matured from U.S. Patent Application No.14/218,128 ("'128 Application") filed March 18, 2014.

18. Based on the prosecution history of the '658 Patent, the USPTO found the claims of the '658 Patent (i) valid under 35 U.S.C. §§ 102, 103 and (ii) eligible for patent protection under 35 U.S.C. § 101.

19. On June 19, 2014, during prosecution of the '658 Patent, the U.S. Supreme Court held in *Alice* with respect to another patent that under 35 U.S.C. § 101, the abstract idea of intermediated settlement was not eligible for patent protection and that patent claims requiring generic computer implementation of the abstract idea failed to transform it into a patent eligible invention.

20. In view of *Alice*, the USPTO issued the following instructions to the USPTO patent examiners examining pending patent applications including the pending '128 Application:

(a) "<u>Preliminary Examination Instructions</u>" (June 25, 2014) re: determining eligibility of claims in pending patent applications under 35 U.S.C. § 101;

(b) "<u>2014 Interim Guidance on Patent Subject Matter Eligibility</u>" (December 16, 2014) "set[ting] forth a two-part analysis for claims reciting judicial exceptions in view of recent decisions by the U.S. Supreme Court and the U.S. Court of Appeals for the Federal Circuit";

(c) "<u>July 2015 Update: Subject Matter Eligibility</u>" (July 2015) updating item (ii) and "assist[ing] examiners when applying [item (ii)] during the patent examination process"; and

(d) Memo re: "<u>Formulating a Subject Matter Eligibility Rejection and Evaluating the Applicant's Response to a Subject Matter Eligibility Rejection</u>" (May 4, 2016) "provid[ing] information to the examining corps on best practices for formulating a subject matter eligibility rejection and evaluating the applicant's response."

Fed. Reg., Vol. 79, No. 241, pp 74618-633; USPTO website https://www.uspto.gov/patent/laws-and-regulations/examination-policy/subject-matter-eligibility.

21. On Jan. 27, 2016, the applicant for the '658 Patent filed a Response to Non-Final in the prosecution of the '658 Patent arguing that certain factors in the pending patent claims "were not routine or conventional in April 27, 2005, the priority date for the present application", the "claims are directed to methods for reducing misuse of identity to assist in preventing financial fraud", and "improve an existing technology: the use of credit card and/or debit cards to facilitate financial transactions", and for those and other reasons, the claims were not patent ineligible under *Alice*. '658 Patent Prosecution History, Response to Non-Final Office Action

5

filed Jan. 27, 2016, pp. 9-12 (available through USPTO Public PAIR https://portal.uspto.gov/pair/PublicPair).

22. On February 11, 2016, after reviewing the above referenced Response, and analyzing the patent claims in the '128 Application under 35 U.S.C. § 101 in view *Alice* and other court decisions, and according to the above-referenced USPTO instructions, the USPTO <u>allowed</u> the claims noting that the "Applicant argument(s) regarding improvement of conventionally known credit card/debit card technology is persuasive." '658 Patent Prosecution History, Notice of Allowability filed Feb. 11, 2016, p. 2 (available through USPTO Public PAIR https://portal.uspto.gov/pair/PublicPair).

## INFRINGEMENT OF THE '658 PATENT

23. On information and belief, Defendants are banks that have made, used, offered to sell, sold or imported products, systems, and services, including but not limited to Defendants' products, systems and services for debit and/or credit card control, monitoring, and management incorporating the "CardGuard" app or similar products, systems, and services ("Products") in the United States, including in this District, individually and in concert with others. See Defendants' website https://www.first-online.com/cardguard?dsbl_mobi_redir=yes (describing the CardGuard app).

24. Defendants advertise, describe, and advise on use of the CardGuard app as follows:

> **CardGuard**
>
> Complete control of your FirstPlus debit card.
>
> **CardGuard** is free for First Plus debit cardholders, both individuals and businesses. And it's available only at First Financial Bank!
>
> Download this exclusive app for your Apple® iPhone® or Android™ phone today! If you're not a First Financial checking account customer, we invite you to

open an account at any of our banking centers! …

Benefits for Cardholders

If you're trying to stick to a budget, **CardGuard** can help. Set spending limits for general use or by type of merchant. **CardGuard** lets you change parameters 24/7 using your mobile phone…

Benefits for Families

If your children use your FirstPlus debit card or have cards of their own, you can easily monitor and control their spending with **CardGuard**. Simply set limits on purchase amounts and where the card can be used…

Benefits for Businesses

**CardGuard** is a valuable tool for controlling the use of company debit cards. Set transaction controls by merchant, location and spending limit to ensure employees adhere to your purchasing policies.

What can **CardGuard** do for me?

It is an instant ON/OFF Switch for your card

Immediately disable your lost or stolen First Financial FirstPlus debit card, then enable it again if found...

Set spending limits

Use Spend Limits to set the maximum purchase allowance for individual transactions. You can allow payments up to a certain amount and decline transactions that exceed your preset limits.

Control purchase types

Use Merchant Types to define the types of merchants where your card can be used for purchases like grocery stores, gas stations, and restaurants.

Define how your card can be used to shop

Use Transaction Types to enable online transactions when you're shopping online and disable them after making purchases to prevent internet fraud.

Set geographic limits for your card

Use Locations to restrict purchases to merchants within a certain range of your location. Set geographic limits for card use by city, state or zip code…

Defendants' webpage https://www.first-online.com/cardguard?dsbl_mobi_redir=yes (emphasis revised).

25. On information and belief, at least use or execution of the Products by Defendants and entities having financial accounts at Defendants causes performance of each of the steps recited in claims 1-16 of the '658 Patent.

26. The performance of each of the steps recited in any of claims 1-16 of the '658 Patent constitutes infringement of the respective claims of the '658 Patent.

27. Defendants have had knowledge and notice of the '658 Patent and its infringement at least through the receipt of a letter sent to FFB on November 6, 2017 requesting any explanation if FFB believes there is no correspondence between the claims of '658 Patent and the Products.

28. Defendants provided no explanation in response to the request.

29. Despite this knowledge and notice, Defendants continue to commit the herein-mentioned infringing acts. Defendants' knowledge of the '658 Patent in advance of the letter will be a subject of discovery.

## CAUSE OF ACTION

## PATENT INFRINGEMENT OF THE '658 PATENT – 35 U.S.C. § 271

30. Plaintiff incorporates by reference each of the allegations in paragraphs 1-28 above and further alleges as follows:

31. Defendants, individually or based on the actions of other entities attributable to Defendants, have infringed and continue to infringe claims 1-16 of the '658 Patent by making, using, offering to sell, selling, or importing Products that perform or cause performance of each step of claims 1-16 of the '658 Patent.

32. Defendants induced and continue to induce infringement of claims 1-16 of the '658 Patent by inducing others to make, use, offer to sell, sell, or import Products embodying the claimed invention. Defendants have had knowledge of the '658 Patent at least through the receipt of the letter sent to FFB on November 6, 2017. Defendants specifically intend for the Products to be used in an infringing manner by, among other things, offering the Products to customers, instructing them on use of the Products, and instructing them to "Download the exclusive [CardGuard] app" for use with the Products. *See* Defendants' webpage https://www.first-online.com/cardguard?dsbl_mobi_redir=yes and excerpts therefrom *infra*.

33. Defendants contributed to and continue to contribute to infringement of claims 1-16 of the '658 Patent by offering to sell, selling or importing Products or a component thereof for use in practicing the patented invention, constituting a material part of the invention. Defendants have knowledge of the '658 Patent as described above. Defendants knew the Product or a component thereof was especially made or adapted for use in an infringement of the claims of the '658 Patent. The Product or the component thereof is not a staple article or commodity of commerce suitable for substantial non-infringing use.

34. Defendants contributed and continue to contribute to infringement of claims 1-16 of the '658 Patent by, e.g., offering to sell, selling and importing certain types of debit cards, credit cards, apps, and/or financial accounts ("Components") for use in practicing the patented invention, constituting a material part of the invention. Defendants have knowledge of the '658 Patent as described above. Defendants knew the Components were especially made or adapted for use in an infringement of the claims of the '658 Patent. The Components are not a staple article or commodity of commerce suitable for substantial non-infringing use.

35. Defendants have committed, and continue to commit acts of infringement of the '658 Patent under the Doctrine of Equivalents in addition to the above allegations of direct, contributory and inducement of infringement.

36. Defendants' past and continued acts of infringement of the '658 Patent have caused damage to Plaintiff. Plaintiff is entitled to recover damages from Defendants in an amount subject to proof at trial, but in no event less than a reasonable royalty for Defendants' infringement together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

37. Defendants' infringement of the '658 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless Defendant is enjoined by this Court from further acts of infringement.

38. Defendants' conduct in infringing the '658 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## JURY TRIAL DEMAND

Under Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A. a permanent injunction under 35 U.S.C. § 283 enjoining Defendants, all those in privity with Defendants, their affiliates, officers, agents, employees, and attorneys, and anyone acting in concert with them, from infringing, inducing infringement and contributing to the infringement of the claims of '658 Patent;

B. a judgment that Defendants have infringed, directly and indirectly, the claims of the '658 Patent literally and/or under the doctrine of equivalents under 35 U.S.C. § 271;

C. damages in an amount sufficient to compensate Plaintiff for Defendants' infringement of the claims of the '658 Patent;

D. enhanced damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement;

E. a declaration that this case is exceptional under 35 U.S.C. § 285 and Plaintiff's reasonable attorneys' fees, expenses and costs for prosecuting this action;

F. pre-judgment and post-judgment interest to Plaintiff on the foregoing amounts at the maximum allowable rate recoverable by law; and

G. such other and further relief as this Court may deem just and proper either at law or in equity.

Dated: December 20, 2017                    Respectfully submitted,

                                                                                                 */s/ Nicholas A. Kurk*
Nicholas A. Kurk (ARDC 6292133)
Young Basile Hanlon & MacFarlane, P.C.
150 N. Wacker Dr., Suite 1450
Chicago, IL 60606
(312) 754-9332 / (248) 649-3338 Fax
kurk@youngbasile.com

-and-

John Demarco (*Pro Hac Vice To Be Filed*)
Young Basile Hanlon & MacFarlane, P.C.
700 Milam St., Suite 1300
Houston, TX 77002
(832) 871-5058 / (248) 649-3338 Fax
demarco@youngbasile.com

-and-

Kenneth A Godlewski
(*Pro Hac Vice To Be Filed*)
Hunter Taubman Fischer LLC
1201 15th Street, NW, Suite 200

Washington, DC 20005
202-704-5860 / 202-659-2697 Fax
kgodlewski@htflawyers.com

*Attorneys for Plaintiff*

Case: 1:17-cv-09174 Document #: 1 Filed: 12/20/17 Page 12 of 12 PageID #:12